Scott D. Calkins, Esq. (CA SBN 187489)
scalkins@cslawoffices.com
Anthony P. Gaeta, Esq. (CA SBN 239754)
agaeta@cslawoffices.com
COLLINSWORTH, SPECHT,
CALKINS & GIAMPAOLI, LLP
9665 Chesapeake Dr., Ste. 305
San Diego, California 92123
Telephone: (858) 549-2900
Facsimile: (858) 549-3700

Christopher A. Abel, Esq. (VA SB No. 31821)
cabel@wilsav.com
*Pro Hac Vice Application Pending*
Daniel T. Stillman, Esq. (VA SB No. 88774)
dstillman@wilsav.com
*Pro Hac Vice Application Pending*
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566

Counsel for Plaintiff, AMP United, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMP United, LLC, | Case No.: **'22CV1647 BEN AHG** |
| Plaintiff, | |
| v. | **COMPLAINT IN ADMIRALTY** |
| Pacific Ship Repair & Fabrication, Inc., | |
| Defendant. | |

NOW COMES Plaintiff, AMP United, LLC (hereinafter, "Plaintiff" or "AMP United") by counsel, and as and for its Complaint against Defendant, Pacific Ship Repair & Fabrication, Inc. (hereinafter, "Defendant" or "Pac Ship"), states as follows:

## NATURE OF THE CASE

1. This is an admiralty and maritime claim, within the meaning of Fed. R. Civ. P. 9(h), and is within the admiralty jurisdiction of this court pursuant to 28

1

U.S.C.A. § 1333, for breach of a maritime contract to repair a ship and for damages.

## JURISDICTION AND VENUE

2.     This court has subject matter jurisdiction over the current breach of contract action pursuant to Article III, Section 2, of the United States Constitution (U.S. Const. Art. III, § 2), 28 U.S.C.A. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 9(h)), given that the claims described more fully below include the Defendant's breach of marine ship repair contracts, which are maritime contracts subject to this Court's admiralty jurisdiction.

3.     This Court has personal jurisdiction over the Defendant, given that the above-mentioned Defendant has sufficient contacts within this Judicial District to avail itself to this Court's general jurisdiction, and performance of the subject maritime contract as described more fully below became due within the State of California.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant's principal office is in this District, and a substantial part of the acts and omissions giving rise to this lawsuit occurred within this District.

## THE PARTIES

5.     Plaintiff, Amp United, LLC, is a limited liability company existing under the laws of the State of New Hampshire with its principal place of business located at 50 Sheffield Drive, Suite 104, Dover, New Hampshire.

6.     Upon information and belief, Defendant, Pacific Ship Repair & Fabrication, Inc., is a corporation existing under the laws of the State of California with its principal place of business located at 1625 Rigel Street, San Diego, California.

## STATEMENT OF FACTS

7.     Between April 2021 and August 2021, Plaintiff and Defendant entered into a series of agreements for Plaintiff to perform certain ship repair services aboard USS RUSHMORE (LSD-47), PO 106331S (hereinafter and collectively referred to as

the "Contracts").

8.     Plaintiff properly completed the work associated with these Contracts and submitted invoices at the appropriate contractual intervals but has yet to be paid by the Defendant.

9.     The total amount currently due and owing from Defendant for the ship repair services performed by Plaintiff pursuant to the terms of the parties' contracts is $68,234.00, all of which remains outstanding and unpaid.

10.     On or about March 2, 2022, Plaintiff sent Defendant a letter notifying the defendant that Plaintiff had completed all work associated with the Contracts for which it remained unpaid and requested that Defendant provide written notification and a payment commitment within 15 days. A copy of the Letter is attached hereto as **EXHIBIT A** and incorporated herein by reference.

11.     Plaintiffs March 2, 2022 letter referenced Pacific Ship Repair and Fabrication Inc.'s Purchase Order General Terms and Conditions, Rev. May 2018 (hereinafter, the "Agreement"), which sets forth the terms and conditions and payment intervals for the work/services rendered thereunder.  A copy of the Agreement is attached hereto as **EXHIBIT B** and incorporated herein by reference.

12.     Plaintiff received no response nor was the requested 15-day payment commitment honored by the Defendant.

13.     On or about August 5, 2022, Plaintiff sent another Statement to Defendant for payment in connection with its completion of the repair contracts aboard USS RUSHMORE. A copy of the Statement is attached hereto as **EXHIBIT C** and incorporated herein by reference.

14.     As the exhibited correspondence and accompanying Statement provide, there are a total of four invoices previously billed that Defendant has not paid:  (1) Invoice #1111-1 was due September 2, 2021, in the amount of $17,058.50, and remains unpaid; (2) Invoice #1111-2 was due September 15, 2021, in the amount of $22,601.00, and remains unpaid; (3) Invoice #1111-3 was due October 7, 2021, in the

amount of $26,271.30, and remains unpaid; (4) Invoice #1111-4 was due October 27, 2021, in the amount of $2,303.20, and remains unpaid.

15.    In spite of Plaintiff's above-mentioned claim and invoices to Defendant, as of the date of filing this Complaint, Plaintiff has received no payment from Defendant or from any of their agents with respect to the above-mentioned ship repair services reflected in the Statement of past invoiced work attached as **EXHIBIT C**.

<u>**COUNT I**</u>

**BREACH OF MARITIME CONTRACT FOR SHIP REPAIR SERVICES**

16.    Plaintiff repeats, realleges, and incorporates herein Paragraphs 1 through 15 of this complaint as if the same were fully set forth herein.

17.    Plaintiff has performed all the conditions, covenants, promises, and agreements required under the terms of its ship repair Contracts with the Defendant.

18.    Defendant has failed and refused, and continues to fail and refuse, to perform its part of the contract or to tender such performance insofar as the aforesaid invoices for services rendered by Plaintiff remain unpaid and are long overdue.

19.    Because of Defendant's failure to perform its obligations under the contract, Plaintiff has been damaged in the sum of $68,234.00, no part of which has been paid.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WHEREFORE Plaintiff AMP United, LLC demands this Honorable Court enter judgment against Defendant Pacific Ship Repair & Fabrication, Inc. for the sum of $68,234.00, pre-judgment interest, post-judgment interest, and costs.

Dated: October 24, 2022

COLLINSWORTH, SPECHT,
CALKINS & GIAMPAOLI, LLP

By: _____
Anthony P. Gaeta, Esq.
(CA Bar #239754)
agaeta@cslawoffices.com
9665 Chesapeake Dr., Ste. 305
San Diego, California 92123
Telephone: (858) 549-2900
Facsimile: (858) 549-3700
*Attorneys for Plaintiff AMP United, LLC*

Dated: October 24, 2022

WILLCOX & SAVAGE, P.C.

By: _____
Christopher A. Abel, Esq.
(VA SB No. 31821)
cabel@wilsav.com
*Pro Hac Vice Application Pending*
Daniel T. Stillman, Esq.
(VA SB No. 88774)
dstillman@wilsav.com
*Pro Hac Vice Application Pending*
440 Monticello Avenue,
Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
*Attorneys for Plaintiff AMP United, LLC*



**EXHIBIT A**



AMP UNITED, LLC
50 SHEFFIELD DRIVE, SUITE 104
DOVER, NH 03820

March 2, 2022

David Bain
Pacific Ship Repair and Fabrication, Inc.
1625 Rigel St.
San Diego, CA 92113

Mr. Bain:

AMP United, LLC has completed the work associated with Contracts: USS John P. Murtha (DDG-26), Pacship PO 106187S, and USS Rushmore (LSD-47), Pacship PO 106331S. Please see the attached USS Murtha and USS Rushmore signed COC documents, Enclosures 1 & 2, along with the associated Seller invoices, Enclosures 3 & 4. Since the date that these documents were originally submitted, besides yourself, we have directly contacted Alan Herrmann and your Contracts Team. No payment has been received as of March 2, 2022.

As required in Pacific Ship Repair and Fabrication, Inc., Purchase Order General Terms and Conditions, Rev May 2018, paragraph 5, the Seller is now presenting in this letter a written inconsistency that has been encountered between the Seller and the Buyer due to the lack of response by the Buyer in provided the properly requested payment for work/services render under our current contract purchase orders as noted in the paragraph above. In accordance with Paragraph 19, of the Purchase Order General Terms and Conditions, Rev May 2018, the Seller, and the Buyer agreed to 30-day payment terms, following final completion of work, submission of a proper invoice by Seller, and signoff/acceptance indicated by a completed Buyer FORM "Certificate of Completion". As you can see by the dates noted on Enclosures 1 through 4, the terms of payment have been exceeded and the Buyer is currently in breach of contract to the Seller.

Please provide us written notification with payment commitment within 15 days. It is our intention to provide Pac Ship the opportunity to mitigate this minor contract oversight before it becomes a legal issue for both Buyer and Seller alike.

Thank you in advance for your attention in getting this issue resolved in a timely manner.

Sincerely,

Peter Lignos
Managing Partner
AMP United, LLC



• SHIP REPAIR • PRESERVATION • SCAFFOLD • STRUCTURAL • NON SKID • INTERIOR DECKING •

# EXHIBIT B

# Pacific Ship Repair & Fabrication, Inc.

## Purchase Order
## General Terms and Conditions

Rev. May 2018

Ex B 002

| Clause | | Page |
|---|---|---|
| 1. | Acceptance/Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2. | Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 3. | Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 4. | Obligations under the Prime Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 5. | Order of Precedence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 6. | Performance and Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 7. | Labor Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| 8. | Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| 9. | Packing and Shipping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| 10. | Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| 11. | Infringement Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 12. | Compliance with Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 13. | Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 14. | Foreign Corrupt Practices Prohibition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 15. | Export Control Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 16. | Insurance Requirements for Subcontractors (SELLER and their subcontractors) . . . . . . . . . . . . . . . | 8 |
| 17. | Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| 18. | Indemnification- Government Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| 19. | Invoices, Payment and Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| 20. | Setoff and Withholding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| 21. | Non-Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| 22. | Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| 23. | Non-waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| 24. | Customer Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| 25. | Buyer-Furnished Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| 26. | Suspect/Counterfeit Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| 27. | Conflict Minerals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| 28. | Removed Material, Scrap, Salvage and Excess Material . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| 29. | Technical Manuals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| 30. | Provisioning Technical Documentation (PTD) / Integrated Logistics Support (ILS) . . . . . . . . . . . . | 15 |
| 31. | Specification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| 32. | Workmanship and Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| 33. | Inspection and Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| 34. | Environmental . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| 35. | Hazardous Waste . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| 36. | Hazardous Material Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| 37. | Toxic Substances/Hazardous Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| 38. | Subcontracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| 39. | Other Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| 40. | Independent Contractor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| 41. | Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 42. | Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 43. | Stop Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 44. | Termination for Convenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| 45. | Termination for Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| 46. | Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| 47. | Certification of Claims and Demands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| 48. | Cost or Pricing Data Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| 49. | Release of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| 50. | Anti-Kickback Act, Business Conduct and Ethics, Debarment and Suspension . . . . . . . . . . . . . . . | 22 |
| 51. | Limitation on Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| 52. | NO DISCRIMINATION, EQUAL EMPLOYMENT OPPORTUNITIES FOR VETERANS AND PERSONS WITH DISABILITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| 53. | Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| 54. | Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |

| | | |
|---|---|---|
| 55. | Electronic Signatures | 26 |
| 56. | Examination of Records | 26 |
| 57. | Waiver | 26 |
| 58. | Buyer Authorization | 26 |
| 59. | Customer Communications | 26 |

# Pacific Ship Repair & Fabrication, Inc.
# Purchase Order General Terms and Conditions

## 1. Acceptance/Entire Agreement

These terms and conditions, together with any Special Terms and Conditions or addendum attached hereto or referenced on the Purchase Order, the Purchase Order, and any Representations and Certifications made by Seller, constitute the entire agreement between Buyer and Seller, merge and supersede all communications, written or oral, prior to or contemporaneous with any Order, and shall not be subject to variation irrespective of any wording in Seller's offer or acceptance. Any additional or different terms or conditions which may appear in any communication from Seller are hereby expressly objected to and shall not be effective or binding unless specifically agreed to by the Buyer in supplemental contract form. Any Order becomes a binding contract when accepted by Seller, either by acknowledgment or commencement of performance. Seller shall include the substance of these provisions (Entire Agreement) in all subcontracts Seller places in support of the Order.

## 2. Definitions

The following definitions apply unless otherwise specifically stated:

**Article** - A Service or item of the Order

**Buyer** - Pacific Ship Repair & Fabrication, Inc. (also referred to as "PACSHIP" or "PSRF").

**Contracting Officer** - The Government Contracting Officer for the Prime Contract or authorized representative.

**DFARS** - The Department of Defense FAR Supplement

**FAR** - The Federal Acquisition Regulations

**Government** - The Government of the United States, including its Federal Agencies

**Order** - A written order signed by the Buyer's Agent, the Purchase Order.

**Prime Contractor** - The holder of the Government contract under which an Order is issued

**Seller** - The legal entity which contracts with the Buyer to provide goods or services (the Articles)

## 3. Headings

The descriptive headings contained in this Order are for convenience or reference only and in no way define, limit or describe the scope or intent of this Order.

Ex B 005

**4. Obligations under the Prime Contract**

If the face of an Order includes identification of a prime contract, the goods or services (or both) ordered are procured in furtherance of Buyer's performance of Buyer's prime contract with its customer. If an Order includes identification of a prime contract, drawings or specifications, or both, such references are intended to reflect the requirements of Buyer's prime contract or Buyers Subcontract under its customers Prime Contract with the government, and it shall be the responsibility of Seller to assure that it is familiar with and strictly complies with all prime contract requirements applicable to the goods, services, or both, covered by such Order. Upon request, Buyer will provide copies of applicable plans, specifications, and general requirements of the prime contract.

**5. Order of Precedence**

a) In the event of any inconsistency between any parts of this Order, the inconsistency shall be resolved by giving precedence in the following order:

i) The Order and any modifications or changes thereto exclusive of items (ii) through (vi).

ii) Any FAR and DFARS clauses (and any other regulations referenced therein) or other special provisions to these General Provisions (also referred to as terms and conditions) as invoked in this Order.

iii) These General Provisions and any other regulations referenced therein.

iv) Statement of Work.

v) Specification/Drawing.

vi) Other documents referenced in this Order.

b) Seller shall immediately bring any inconsistencies to the attention of Buyer in writing, and any inconsistencies in or among any of the foregoing shall not be the basis for any defense of a breach of contract claim brought by Buyer against Seller for Seller's failure to perform under this Order, nor shall any such inconsistencies be the basis for any claim of any kind by Seller against Buyer unless Seller has first timely brought such inconsistencies to Buyer's attention and Buyer has failed to resolve such inconsistencies.

**6. Performance and Delivery**

It is agreed that time is of the essence in performance of any Order incorporating these terms and conditions. Commencement and completion of work or delivery of the goods ordered shall be strictly in accordance with the schedule/date set forth on the face of the Order , or, if no schedule/date is there set forth, in accordance with the requirements of Buyer's prime contract. When requested by Buyer, Seller shall submit to Buyer, in the form acceptable to Buyer, a detailed schedule for performance of the Order, which schedule will comply with all schedule requirements of Buyer's prime contract, within three (3) days of Buyers request. If the Order requires shipboard work, Seller shall, at no additional cost to Buyer, coordinate its work with that being performed by Buyer, Buyer's customer, or other subcontractors of Buyer or Buyer's customer.

Seller shall furnish personnel, supervision, equipment, and materials sufficient to complete the Order within the defined schedule. If Seller falls behind schedule or if it otherwise appears that Seller will not complete the tasking or deliver goods within the schedule required, the Buyer may, in accordance with Clause 45 (Termination for Default) hereof, terminate Seller's right to proceed with the task or with such part of any task as is behind schedule, or may require Seller,

at Seller's expense, to increase its personnel or shifts, to use overtime, to use expedited shipping means, or to take such other measures as may be necessary to meet or recover schedule. Seller agrees to notify Buyer immediately if, at any time, it appears that the delivery schedule set forth herein may not be met. Such notifications shall include the reasons for any possible delays, steps being taken to remedy any such problems and a proposed revised delivery date.

Seller shall, at their own expense, provide workers with proper credentials for access to Naval Facilities and other BUYER customer shipyards. This includes pier access passes.
Seller shall, within three (3) days of Order completion, remove all Seller responsible equipment, material, scrap, salvage, excess, and hazardous materials, from the ship, wharf, pier, and Buyers customers' facilities. If not removed in the time specified herein, Buyer *may* remove Seller responsible items and store them until Seller retrieves them. Seller shall be responsible for Buyers cost of removal and storage.

### 7.     Labor Disputes
Whenever an actual or potential labor dispute delays or threatens to delay Seller's performance of this Order, the Seller shall immediately give notice thereof to Buyer. Such notice shall be confirmed in writing and shall contain all information relevant to the dispute. Seller agrees to include this paragraph in all subcontracts or purchase orders issued by Seller in connection with this Order.

### 8.     Title
Unless otherwise stated in the Order, title to Supplies covered by the Order shall pass from the Seller to Buyer at the F.O.B. point.

### 9.     Packing and Shipping
The Articles shall be packed and shipped by Seller in accordance with Buyer's instructions and good commercial practice so as to ensure that no damage shall result from handling, weather, or transportation. If Articles are tendered to a common carrier for delivery, packing also shall conform to packing requirements applicable to such carrier. The cost of such packing and shipping shall not be allowed unless included in the price of the Articles. Evidence of shipment of goods must be forwarded to Buyer immediately after shipment. A certificate stating that all required tests have been performed and that all Articles conform to drawings and specifications shall be supplied separately for each partial or complete shipment of each Article. Unless otherwise stated, all deliveries and prices are F.O.B. Buyer's facility and all sales, excise, or other taxes applicable to the Articles are included in the Order price.

### 10.     Warranty
Seller warrants that all work and materials furnished hereunder will be free from defects in materials and workmanship and will conform to applicable specifications, drawings, samples and descriptions, and if Seller's design or selection, will be free from design defects and fit for intended use. Except as otherwise expressly provided, the foregoing warranties shall be in effect for a period of 90 days that shall commence immediately following the completion of Buyer's contract or the redelivery of the vessel by Buyer, or the date of final acceptance by the government, whichever occurs first, provided, however, if the equipment, materials, or workmanship provided hereunder is incomplete at the time of completion of the contract or redelivery of the vessel, the above guarantee shall not commence until said equipment,

materials, or workmanship is completed. Completion includes delivery to Buyer, and acceptance by Buyer's Prime Contract Customer, of required reports and objective quality evidence. If any time during said period, non-conformity in equipment, materials or workmanship furnished by Seller is discovered, such non-conforming equipment, material, or workmanship shall be made good, at Seller's expense, to the requirements of this contract and the plans and specifications. All warranties shall run to Buyer and Buyer's customers.

## 11. Infringement Indemnity

Seller shall indemnify and hold harmless Buyer, its successors, assigns, customers, and users, to the extent such customers and users are indemnified by the Buyer, for the full extent of any loss, expense, cost, damage, or liability from any claimed infringement of any United States patent, trademark, copyright, or any claimed unauthorized use of data or proprietary rights with respect to the Articles, except those manufactured to Buyer's detailed design or manufacture differ from Seller's normal practice. Seller shall defend same at its expense, provided that Buyer notified Seller of such claimed infringement.

## 12. Compliance with Laws

Seller shall comply with all Federal, State, and local laws, Naval Base Instructions, Notices and Directives, executive regulations, and orders.

The Seller shall be responsible for obtaining any necessary license and permits applicable to the performance of work.

Seller shall produce the Articles in compliance with all requirements of the **Fair Labor Standards Act.**

Seller shall comply with Executive Order 13496, 29 CFR 471 – **NOTIFICATION OF EMPLOYEE RIGHTS UNDER FEDERAL LABOR LAWS,** 29 CFR Part 471, Appendix A to Subpart A.

Seller covenants to hold Buyer and its assignees harmless from any and all costs, damages and expenses (including reasonable attorney's fees) incurred by Buyer and its assignees arising out of or as a result of any failure of Seller to comply with any such laws and regulations.

## 13. Governing Law

The parties agree that irrespective of the place of performance of this Order, the Order shall be construed and interpreted according to Federal Common Law and Federal Contract Law as enunciated and applied by the Federal courts, boards of contract appeals and other administrative and quasi-judicial bodies of the Federal Government. To the extent the Federal Common Law and Federal Contract Law is not determinative, the laws (both substantive and procedural) of the State of California in effect at the time of the execution of this Order shall apply as the same would be applied to transactions between residents of the State of California to be fully performed within the State of California and without regard to the State's conflict of laws principles. Any action by either party against the other shall be brought before any court in the State of California having competent jurisdiction.

## 14. Foreign Corrupt Practices Prohibition

    (a)    By accepting this Order, Seller certifies and represents that it has not made or solicited and will not make or solicit any offer, payment, promise to pay, or authorization to pay any money, gift, or anything of value to any governmental official

or any political party, party official or candidate, either directly or through an intermediary, corruptly for the purpose of influencing any official act, omission, or exercise of influence by the recipient, to assist Buyer or Seller in obtaining or retaining business.

(b)      Seller shall ensure that all lower tier subcontracts include this paragraph.

## 15.    Export Control Compliance

(a)      Seller shall comply with the Arms Export Control Act (22 U.S.C. 2778), the International Traffic In Arms Regulations (ITAR) (22 CFR Parts 120 to 130), the regulations issued by the Office of Foreign Assets Control (OFAC) (31 CFR Chapter V), and all other applicable laws, regulations and orders which control the imports and exports of defense articles, defense services, and technical data.

       (1)      The Vessel and the Contract Products are deemed to be "defense articles" under the ITAR. This Contract may require Seller to furnish "defense services" and/or export "technical data" as defined in the ITAR.

       (2)      Seller represents and warrants that, if it manufactures or exports defense articles or furnishes defense services, it is registered with the Office of Defense Trade Controls (DTC), Bureau of Political-Military Affairs, Department of State.

       (3)      Technical data and defense services furnished by Buyer to Seller are authorized for use only by Seller and may not be exported or re-exported without a license or other approval from DTC.

       (4)      If Seller desires to authorize Buyer to export technical data directly to, or furnish defense services to, a sub-tier supplier that is a foreign person, Seller shall include Buyer as a third party signatory on any export license or other approval prior to Buyer's exporting technical data to, or furnishing a defense service to, any such foreign person sub-tier supplier.

       (5)      Seller shall provide to Buyer, within three (3) days of the request, all licenses or other approvals obtained by Seller in compliance with the above requirements, redacted if Seller desires to prevent the disclosure of any proprietary data.

(b)      If Seller is not organized to do business in the United States, Seller nevertheless shall perform this Contract in compliance with the laws, regulations and terms set forth in subparagraph (a) hereof, specifically including, but not limited to, those provision regarding the re-export of defense articles, defense services and technical data.  Seller shall execute any documents required by Buyer in order for Buyer to lawfully export defense articles, defense services or technical data, or furnish defense services, to Seller in the performance of this Contract.

## 16.    Insurance Requirements for Subcontractors (SELLER and their subcontractors)

(A) Without limiting the indemnity obligations or liabilities of SELLER or its insurer(s) under the Order, at any and all times during the term of the Order, SELLER shall at SELLER's expense maintain, with an insurance company or companies authorized to do

Ex B 009

business in the location where the Order is to be performed, insurance coverage's of the kind and in the minimum amounts set forth below and in a form and with such insurers acceptable to BUYER. All such policies shall be "occurrence" as opposed to "claims made" policies unless agreed to in writing by the BUYER. The limits specified shall be minimum limits only and additional insured's shall be entitled to the full limits of all policies actually obtained. The limits of such policies shall in no way limit the indemnity or other obligations of SELLER under the Order unless otherwise required by applicable law. Failure to maintain insurance shall give BUYER the right to immediately terminate the Order without prior notice to SELLER. SELLER shall be solely liable for and shall assume the costs of any deductible amounts of self-insured retentions and any liability of SELLER in excess of the insurance maintained. In the event any liabilities of SELLER are not covered by the insurance specified herein SELLER shall be deemed to be self-insured to that extent.

The insurance that SELLER is required to maintain is as follows:

### (1) Comprehensive General Liability (CGL)
Minimum limits: $2,000,000 CGL
Must include contractors liability, products/completed operations and bodily injury of at least $1,000,000 per occurrence

### (2) Automobile Liability
Minimum combined bodily injury and property damage: $1,000,000 per occurrence. (Not required if not driving a vehicle at any of our job sites)

### (3) Workers Compensation and Longshoremen's and Harbor Workers Compensation Insurance
Insurance with limits of liability conforming to the statutory requirements of the United States of America and any state where the work is being performed by Subcontractor's employees. (US Longshoremen's and Harbor Workers (USL&H) Coverage not required if employees will not go aboard vessels, piers, wharfs or docks.) (Workers Compensation Insurance is not required if there are no employees other than owners.)

### (4) Excess Liability
If required to meet the above minimum limits

### (5) Jones Act Coverage
If Seller's employees, subcontractors or suppliers are required to go to sea aboard a Vessel, Seller shall maintain Jones Act coverage with minimum limits of liability of $2,000,000 per occurrence and $2,000,000 in the aggregate.

### (6) Defense Base Act Coverage
If Seller's employees, subcontractors or suppliers are required under this Contract to perform any work related to any U.S. Government contract outside of the United States, Seller shall maintain Defense Base Act

coverage with minimum limits conforming to the statutory requirements of the United States.

(B) **SELLER hereby waives subrogation** and, prior to commencing work under the Order for BUYER, shall obtain from its insurers full waivers of subrogation (whether direct, indirect, equitable, by loan receipt or otherwise) against BUYER, its contractors and subcontractors (excluding SELLER) and its customers, their respective vessels, joint ventures', co-lessees, partners, parents, subsidiaries, affiliates, and interrelated companies and their respective officers, directors, agents, employees, and representatives, , — the contractors, subcontractors, vendors, and suppliers of any of the foregoing (all of the foregoing herein after referred to as the "BUYER Group") in all of the insurance policies set forth in this Clause and all insurance carried by SELLER protecting against loss of or damage to its property and equipment employed in the performance of the Order. As used in these Terms and Conditions, the term "affiliate" means any entity, which controls, is controlled by, or is under common control with another entity or which entity does or is required by applicable laws or accounting rules to consolidate its financial statements for financial reporting purposes with such other entity. An entity is deemed to control another if it owns directly or indirectly at least fifty percent (50%) of (i) the shares entitled to vote at a general election of directors of such other entity, or (ii) the voting interest in such other entity if such other entity does not have either shares or directors.

(C) Further, the BUYER Group **shall be named as additional insured's** in all insurance policies carried by SELLER, other than the Worker's Compensation and Employers' Liability Insurances. All such policies shall insure the BUYER Group as additional insured's for any liabilities assumed by SELLER hereunder, including those under Clause 17 (Indemnity) of these Terms and Conditions. All such policies shall be endorsed to provide that they are primary to any coverage's maintained or available to such additional insured's, regardless of any "excess" or "other insurance" clauses therein. All such policies shall be endorsed to provide that additional insured's shall not be liable for premiums, commissions, or calls, and that BUYER shall be given thirty (30) days prior written notice of any cancellation, non-renewal, or material modifications of such policies.

(D) All such insurances will provide for contractual liability coverage to fully cover the indemnity obligations of SELLER assumed in this Agreement. All such policies shall have navigation or territorial limits adequate for the engagement contemplated herein. All such policies shall be satisfactory in form and substance to BUYER, and shall not contain additional exclusions or deletions which adversely affect the coverage afforded by the policies in favor of the additional insured's required hereunder. All such policies shall be endorsed to provide that employees of one insured shall be treated as members of the public as to all other insured's.

(E) In the event SELLER seeks to be a self-insurer and BUYER has consented to SELLER being a self-insurer as to any one or more of the risks as to which coverage is herein required, evidence of such consent must be in writing and approved by a representative of BUYER authorized to enter into such consent agreement.

Ex B 011

(F) SELLER shall require all of its contractors and subcontractors to obtain and maintain in full force and effect all of the insurances with coverage's and limits required hereunder, to name as additional insured's with full waiver of subrogation on all such policies the BUYER Group, and to certify such coverage's to BUYER. Any failure of contractors and subcontractors to comply with this requirement and any deficiencies in coverage's or limits of such policies shall be the sole responsibility of SELLER.

(G) The failure of SELLER, its underwriters or brokers to have in place and maintain the insurance coverage's provided for herein shall constitute a breach of contract for which SELLER shall be liable in damages to BUYER for all losses, expenses, claims or judgments that otherwise would have been covered under the required policies. The BUYER shall also be entitled to recover reasonable attorneys' fees and costs associated with any claim against SELLER, its underwriters, or brokers seeking indemnity, insurance coverage, and/or damages for breach of contract.

(H) Seller or Sellers insurance broker or insurer shall immediately notify buyer in the event that notice of cancellation is issued for any reason prior to the expiration date of any policy subject to this Clause.

- Please have copies of the required Certificates and applicable Policy Endorsements emailed or faxed to the party requesting it. In addition, please arrange to have hard copies of Certificates and Policy Endorsements mailed directly to:

> Pacific Ship Repair & Fabrication, Inc.
> Contracts Department, Insurance
> 1625 Rigel Street
> San Diego, CA 92113-3808

**17.    Indemnity**

Seller shall defend, indemnify, save and hold Buyer, its directors, officers, agents and employees, free and harmless from and against all claims, adjudications, demands, causes of action, damages and liabilities of any nature, and all costs and expenses incurred in connection therewith (including, but not limited to, attorneys' fees) for (i) death or injury to any person or persons (including, but not limited to, agents and employees of Seller and its Suppliers and damages characterized as special, direct, consequential, loss of consortium, or future earnings); (ii) joint employer liability for Seller's employees, Suppliers or agents (to the extent permitted by law); (iii) damage or loss of any property (including, but not limited to, loss of use, lost profits, or diminution in value) arising directly or indirectly out of or in connection with Seller's performance of the Contract, (iv) claims by Seller, Seller's employees or its Suppliers and their employees for wages, benefits and other compensation and claims for resulting penalties; and claims by governmental agencies or others for taxes or contributions allegedly due by reason of Seller or its Suppliers performing the Contract Work; (v) acts or omissions under the Contract; and (vi) infringement of any third party intellectual property rights, in all including, without limitation, claims, demands, actions, damages and liabilities based in whole or in part on the negligence or other theory of liability of Seller or its Suppliers, and excluding only claims and liabilities based on Buyer's sole gross negligence or willful misconduct. Buyer has the sole right to designate the attorney or law firm that will defend and represent it in or relating to any suit, claim, or

Ex B 012

action that is subject to indemnification, including without limitation any indemnity provision in the Contract. This provision survives termination of the Contract and is not subject to the Limitation of Liability Clause. Buyer may assign its right to be indemnified hereunder.

### 18.    Indemnification- Government Requirements

Buyer will not accept, store or dispose of any toxic substances or hazardous material except as and to the extent, if at all, expressly provided for in this Order. In particular, paints, primers, or coatings on products required by this Order that contain the following constituents shall not be shipped without prior written approval by Buyer: arsenic, mercury, methylene chloride, methyl ethyl ketone (MEK), lead, and chromium, their compounds, or organo-metallic material. Materials known or suspected of containing or coming in contact with asbestos, polychlorinated biphenyls (PCBs), or mercury or mercury containing compounds shall not be provided without Buyer's prior written permission. If invoked specifications and standards permit other materials in lieu of these materials, they shall be used.

### 19.    Invoices, Payment and Taxes

Payments terms are NET 30 days following final completion of work, submission of a proper invoice by Seller, and signoff/acceptance indicated by a completed Buyer FORM "Certificate of Completion". Progress payments may be authorized, upon agreement of Buyer. The 30 day clock starts as of the invoice date or Contract Administrator signature date indicated on the "Certificate of Completion" form, whichever is later. Final Invoices shall be submitted to Buyer within 30 Days of completion of each Order.

Prices include all Federal, State, and local taxes, duties, tariffs, and similar fees imposed by the government. Only those taxes, duties, tariffs, and similar fees specifically identified in Sellers proposal in response to Buyer's RFP/RFQ will be paid.

### 20.    Setoff and Withholding

Buyer may set-off any amount due from Seller, whether or not under the Order, against any amount due Seller hereunder. Buyer may withhold from payment to Seller an amount sufficient to reimburse Buyer for any loss, damage, expense, cost, or liability relating to Seller's alleged or actual failure to comply with any requirements of the Order.

### 21.    Non-Assignment

Buyer shall not be bound by any assignment until after receipt of written notice from Seller. Seller shall not assign or delegate the Order or any right, duty, or interest therein, including any payment due or to become due with respect thereto, without Buyer's prior written consent. Payment to an assignee shall be subject to setoff or withholding for all present or future claims which Buyer has against Seller, unless such claims are expressly waived in writing.

### 22.    Liens

Seller shall promptly pay when due all charges incurred in connection with the Order and shall indemnify BUYER against any lien or claim arising out of non-payment of such charges. BUYER may require, prior to making payment to Seller, that Seller provide releases or satisfactory evidence of its payment of all such charges.

Ex B 013

**23.    Non-waiver**

No waiver of any provision or failure to perform any provision of the Order shall be effective unless agreed to by an authorized agent of the Buyer in writing nor shall any such waiver constitute a waiver of any other provision or failure to perform.

**24.    Customer Property**

Seller shall be strictly accountable for any property of Buyer or Buyer's customer that comes into the control of Seller during the performance of any Order including, but not limited to, any material removed from a customer's ship, and specifically including, but not limited to, any oils or fuels removed from tanks. Seller shall control, protect, preserve, and maintain records of all such property in conformance with the requirements of FAR Subpart 45.5.

**25.    Buyer-Furnished Property**

Seller shall not use, reproduce, appropriate, or disclose to anyone other than Buyer any material, technical information, and other property or data furnished by Buyer, nor shall Seller use the same to produce or manufacture articles other than those required hereunder without prior written authorization from Buyer. Title to such Buyer-furnished property shall be and remain in Buyer at all times. Seller shall bear the risk of loss, damage, or destruction of the property furnished by Buyer and shall promptly replace or repair without expense to Buyer any property which is lost, damaged, or destroyed, unless such loss, damage, or destruction is solely, directly, and proximately caused by Buyer's negligence. All Buyer-furnished property, together with spoiled and surplus materials, shall be returned to Buyer at termination or completion of this Order unless Buyer shall direct otherwise in writing.

**26.    Suspect/Counterfeit Parts**

A.    "Suspect/counterfeit parts" are parts that may be of new manufacture, but are misleadingly labeled to provide the impression they are of a different class or quality or from a different source than is actually the case. The term "suspect/counterfeit parts" also includes refurbished parts, with or without false labeling, that are represented as new parts or any parts that are designated as suspect by the U.S. Government, including but not limited to parts listed in alerts published by the Defense Contract Management Agency under the Government-Industry Data Exchange Program (GIDEP).

B.    Seller will ensure that suspect/counterfeit parts are not incorporated into any Articles of the Order. The intentional or unintentional use, incorporation, or delivery of suspect/counterfeit parts is strictly prohibited.  This includes a suspect/counterfeit part's being provided either as an end item deliverable or as a component or sub-component of an end item deliverable under this Order.

C.    Seller represents and warrants that it has policies and procedures in place to ensure that none of the Products furnished to Buyer under this Order are or contain "suspect/counterfeit parts."  Seller further certifies, to the best of its knowledge and belief that no "suspect/counterfeit parts" have been or will be furnished to Buyer by Seller under this Order.

D.    If Seller becomes aware or suspects that it has furnished suspect/counterfeit parts or if Buyer determines, including as a result of alerts from the U.S. Government, that Seller has supplied suspect/counterfeit parts to

Ex B 014

Buyer and so notifies Seller, Seller shall immediately replace the suspect/counterfeit parts with parts acceptable to Buyer and conforming to the requirements of this Order. Notwithstanding any other provision of this Order, Seller shall be liable for all costs incurred by Buyer to remove and replace the suspect/counterfeit parts, including without limitation all costs incurred by Buyer relating to the removal of such suspect/counterfeit parts, the reinsertion of replacement parts and any testing necessitated by the re-installation of Seller's Products after suspect/counterfeit parts have been exchanged. The parties agree that Seller will pay Buyer's actual costs and Buyer's labor at Buyer's fully-burdened hourly rates (as appropriate) utilizing the then-current Government-approved rate set authorized for change-order activity. All such costs shall be deemed direct damages.

E.    Buyer may, at its discretion:

  (i)    Remove and or retain or both all Articles supplied by Seller that are suspected of being or containing suspect/counterfeit parts pending reporting to the appropriate law enforcement authorities and final disposition of the Articles by them. Seller shall be liable for all costs relating to Buyer's removal and retention of the suspect/counterfeit parts.

  (ii)    Turn over to the appropriate authorities (*e.g.*, without limitation, the Defense Criminal Investigative Service, Naval Criminal Investigative Service, Federal Bureau of Investigation, Offices of the Inspector General, etc.) any Articles suspected of being or containing suspect/counterfeit parts and reserves the right to withhold payment for the Articles pending the results of any investigation or proceedings related to the matter.

F.    Seller's warranty against suspect/counterfeit parts shall survive any termination or expiration of this Order.

G.    Seller shall insert a clause containing all of the terms of this provision in all subcontracts under this Order.

**27.    Conflict Minerals**
On 8/22/2012, the Securities and Exchange Commission (SEC) adopted final rules requiring public companies to provide specialized disclosure relating to their use of conflict minerals (CMs) from the Democratic Republic of the Congo (the DRC) and adjoining countries.

While Pacific Ship Repair & Fabrication, Inc. is not a publicly traded company, we are in the supply chain of other companies who are, and support their efforts to comply with the CM rules.

The SEC's final rules can be found at http://www.sec.gov/rules/final/2012/34-67716.pdf

**REPRESENTATIONS AND CERTIFICATIONS – CONFLICT MINERALS.**
  A.    As of the time of award of this Order, Seller represents that:

  (i)    The Product(s) Seller will be supplying under this Order do not contain any conflict minerals, which are defined as (a) gold or (b) tantalum, tin, or tungsten (derivatives of columbite-tantalite (coltan), cassiterite, and wolframite); or

Ex B 015

(ii)    If the Product(s) contain conflict minerals, Seller has submitted Buyer's Form, "Conflict Minerals Disclosure" (PACSHIP Form 45-025) which is incorporated herein by reference.

B.      If PACSHIP Form 45-025 was submitted to Buyer as described in subparagraph A (ii) above, Seller certifies that the representations and certifications on such form are current, accurate and complete as of date of this Order.

C.      If the status of any Product(s) changes during performance of this Order so that the representations and certifications contained in subparagraphs A and B of this clause are no longer accurate, then Seller must complete and submit to Buyer a revised PACSHIP Form 45-025, which may be obtained from Buyer.

D.      If Buyer determines that any representation or certification made by Seller pursuant to this provision is inaccurate or incomplete in any respect, then Buyer may terminate this Order pursuant to the provision of this Order titled "Termination for Default."

## 28.    Removed Material, Scrap, Salvage and Excess Material

Seller shall retain all removed government material, including scrap, salvage and excess for turnover to BUYER Government Property Department. All such material turned-in must be properly identified by the Seller. Comply with the requirements of NAVSEA Standard Item 009-20, FAR 45.505-8 and FAR 45.614.

Removed material, scrap, salvage and excess material must be turned in no later than three (3) workdays after contract completion.

## 29.    Technical Manuals

Technical Manuals furnished to Seller shall be returned to Buyer no later than Three (3) workdays after contract completion.

## 30.    Provisioning Technical Documentation (PTD) / Integrated Logistics Support (ILS)

Seller shall comply with NAVSEA Standard Item 009-19, 009-21 and 009-82 for providing Provisioning Technical Documentation (PTD) and Integrated Logistics Support (ILS) and Technical Data. Reports called for in the Standard Items will be submitted by Seller to Buyer.

## 31.    Specification

Unless otherwise directed in the Order, Seller shall manufacture the Articles in accordance with the current specifications, drawings, and designs for the Articles. Seller is responsible for validating that specifications, drawings, and designs are the current revisions. If Seller determines that any of the specifications, drawings, or designs are not the most current revision, Seller shall notify Buyer immediately.

## 32.    Workmanship and Materials

Work performed and goods supplied pursuant to any Order shall be in strict accordance with the specifications set forth or referenced in such Order, including all applicable plans and specifications of Buyer's prime contract. Unless otherwise specifically provided in any Order, or in Buyer's prime contract, all operational practices of Seller and all workmanship and materials shall be in accordance with the latest rules and requirements of the American Bureau of Shipping, United States Coast Guard and the American Institute of Electrical and Electronic

Engineers, and with the best commercial marine practice; where buyer's prime contract shall specify U.S. Navy specifications, Navy standards of material and workmanship shall be followed.

**33.   Inspection and Test**

Seller shall maintain a system of quality control including all inspections and tests necessary to insure conformance with the plans and specifications.  At all times during Seller's performance, all material and workmanship shall be subject to inspection and test by Buyer or by its prime contract customer; this right of inspection and test shall include rights of in-process inspection and test and of review of Seller's inspection and test documentation and records.  All goods, work, materials and services furnished hereunder shall be subject to final inspection after completion or delivery notwithstanding prior payment.  Any inspection by Buyer or Buyer's customer, whether in-process or final, and any failure to inspect by Buyer or Buyer's customer shall not be deemed to constitute acceptance and shall not relieve Seller of its obligations hereunder, including, but not limited to those set forth at Clause 32 Workmanship and Materials, above.  In addition to its obligations under Clause 10 Warranty, hereof, Seller shall, prior to acceptance, promptly correct or replace any defective work or materials to the satisfaction of Buyer and Buyer's prime contract customer.  If Seller fails promptly to proceed with such correction or replacement, Buyer may, in addition any other rights provided hereunder or by applicable law, by contract or otherwise, proceed with such correction or replacement and charge to Seller the cost thereof.

**34.   Environmental**

(a)   Hazardous Material Identification and Material Safety Data:  Seller agrees to identify hazardous material as defined by FAR Clause 52.223-3 subparagraphs (a), (b), and (c), to submit a Material Safety Data Sheet as provided by subparagraph (d) of that clause, and otherwise agrees to comply with the provisions of that clause as though Seller were in the position of "offeror" and "contractor" and Buyer were in the position of "contracting officer" as those terms are used in that clause.

(b)   Seller shall comply with all federal, state and local laws and regulations regarding the use of any "hazardous substances" (both terms as defined by both federal and state law) generated in the performance of this Order. Seller shall inform Buyer in writing of all hazardous waste expected to be so generated. Seller shall be solely responsible for the consequences of its failure to perform the foregoing obligations and shall defend and indemnify Buyer for all claims and liability, including penalties, resulting from Buyer's failure to so perform, negligent or otherwise.

**35.   Hazardous Waste**

The Seller shall comply with the Resource Conservation and Recovery Act (RCRA) and all other applicable Federal, State and local laws, codes, ordinances and regulations for the management and disposal of hazardous waste.  Seller is directed to the California Code of Regulations, Title 22, Division 4.5; Environmental Health Standards for Management of Hazardous Waste, for the definitions of "generator" and "hazardous waste".

The Seller agrees to be responsible for the proper management and disposal of all Seller generated hazardous waste and shall use an EPA identification generator number issued to the Seller for the disposal of the hazardous waste.

## 36.    Hazardous Material Identification

Without regard to whether Buyer's prime contract is for the federal Government, Seller agrees to identify hazardous material as defined by FAR Clause 52.223-3 subparagraphs (a), (b) and (c), to submit a Material Safety Data Sheet as provided by subparagraph (d) of that clause, and otherwise agrees to comply with the provisions of that clause as though Seller were in the position of "offeror" and "contractor" and Buyer were in the position of "contracting officer" as those terms are used in that clause.

## 37.    Toxic Substances/Hazardous Materials

Buyer will not accept, store or dispose of any toxic substances or hazardous material except as and to the extent, if at all, expressly provided for in this Order. In particular, paints, primers, or coatings on products required by this Order that contain the following constituents shall not be shipped without prior written approval by Buyer: arsenic, mercury, methylene chloride, methyl ethyl ketone (MEK), lead, and chromium, their compounds, or organo-metallic material. Materials known or suspected of containing or coming in contact with asbestos, polychlorinated biphenyls (PCBs), or mercury or mercury containing compounds shall not be provided without Buyer's prior written permission. If invoked specifications and standards permit other materials in lieu of these materials, they shall be used.

## 38.    Subcontracts

Seller shall not, without prior written consent of Buyer, subcontract for all or any portion of the Order. Consent will not be unreasonably withheld.

In accordance with DFARS 252.244-7001 (c)(24), as modified by Buyer: Establish and maintain procedures to timely notify the Buyer , in writing, if—

Seller changes the amount of lower-tier subcontractor effort after award such that it exceeds 70 percent of the total cost of the work to be performed under its subcontract. The notification shall identify the revised cost of the subcontract effort and shall include verification that the subcontractor will provide added value as related to the work to be performed by the lower-tier subcontractor(s).

## 39.    Other Contracts

Other subcontracts may be awarded by Buyer for portions of the work required under Buyer's prime contract. Seller shall cooperate with all other subcontractors, accept direction from Buyer with respect to performance, schedule or reschedule its work as necessary to coordinate with the work of Buyer and other subcontractors, attend meetings as requested by Buyer, and be responsible for its personnel working harmoniously with Buyer personnel and other subcontractors and with personnel of Buyer's customers, all at no additional cost to Buyer.

## 40.    Independent Contractor

It is understood and agreed that Seller shall be deemed an independent contractor in all its operations and activities under any Order, and that the employees furnished by Seller to perform work under any such Order shall be deemed to be Seller's employees exclusively without any relation whatever to Buyer as employees or independent contractors; said employees shall be paid by Seller for all services and Seller shall be responsible for obligations and reports covering social security, unemployment insurance, worker's compensation, and other reports and obligations required of employers by state and federal law.

## 41.    Changes

Buyer or its prime contract customer may at any time, by written order, make changes within the general scope of any Order. Upon receipt of such a written change order, Seller shall proceed without delay with performance of the Order as changed. If any such change causes an increase or decrease in Seller's cost of, or in the time required for the performance of the Order, an equitable adjustment shall be made in the price or the time for completion, or both, and shall be modified in writing accordingly; Seller's proposal for equitable adjustment shall be submitted to Buyer, in writing, within (3) days of Seller's receipt of a written change order.

If any change shall have resulted or derived in any way from an act or omission or formal or constructive order by Buyer's prime contract customer, Seller's right to equitable adjustment shall be contingent on, and the amount thereof shall be determined in accordance with the following:

   a. Seller shall have provided to Buyer written notice of the facts giving rise to such change and shall have done so in time and in form sufficient to enable Buyer to provide to Buyer's customer notice sufficient to protect Buyer's right to equitable adjustment under Buyer's prime contract.
   b. Buyer shall be liable to Seller only to the extent that Buyer's prime contract customer accepts liability or is adjudicated to be liable therefore;
   c. The amount of Seller's equitable adjustment, if any, shall not exceed that allowed or awarded to Buyer from its prime contract customer, less any profit or costs, or both, to which Buyer is entitled.

## 42.    Force Majeure

Neither party shall be liable to the other for delays resulting from causes beyond its control and  without its fault or negligence, including but not restricted to acts of God or of the public enemy, acts of the Government in either its sovereign or contractual capacity, inability of the Government to pay prime contractor timely, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, or unusually severe weather. Seller shall not be liable for delays of subcontractors or suppliers of Seller only when arising from causes beyond the control and without the fault or negligence of both Seller and such subcontractors or suppliers and only when Seller could not have obtained the supplies or services from other sources in sufficient time to permit Seller to meet the required delivery schedule. Upon the happening of any circumstances or causes aforesaid, the affected party shall notify the other party as soon as possible in writing. Any relief shall be limited to an extension of delivery dates or times of performance to the extent caused thereby.

## 43.    Stop Work

The provisions of the Clause contained in STOP-WORK ORDER FAR 52.242-15 are hereby incorporated by reference with the following change: The words "Contracting Officer" and "Government" shall mean Buyer; the word "Contractor" shall mean Seller; the words "ninety (90) days" are hereby changed to "one hundred (100) days"; and the words "thirty (30) days" are hereby changed to "twenty (20) days" wherever they appear; and the reference to the "Termination for Convenience" shall be deemed to refer to the Clause entitled herein "Termination for Convenience . In subdivision (2) of Paragraph (B), the expression ⁻asserts a claim for the adjustment within twenty (20) days after the end of the period of work stoppage"

Ex B 019

shall be understood to mean "shall, within twenty (20) days after the end of the work stoppage, state its intention to make a claim for adjustment".

**44.    Termination for Convenience**

The provisions of the Clause contained in TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) FAR 52.249-2 are hereby incorporated by reference with the following changes: The words "Contracting Officer" shall mean Buyer; the word "Contractor" shall mean Seller; the word "Government" shall mean Buyer except in Paragraphs (b)(4), (b)(6), (b)(8); and the words "1 year" are changed to "eleven (11) months" in Paragraph (e).

**45.    Termination for Default**

Buyer may, at any time by written notice of default to the Seller, terminate the whole or any part of the work and/or order, without liability to Buyer, for any of the following events.

(a)    The Seller fails to make adequate work progress to meet the required production schedule and schedule milestones, to endanger performance of the job order in accordance with its terms;

(b)    The Seller fails to meet the productions schedule;

(c)    The Seller fails to complete the work;

(d)    The Seller fails to furnish the material required by ;

(e)    The Seller breaches any terms or conditions of this agreement including but not limited to warranties and guarantees;

(f)    The Seller's insolvency: filing a voluntary or involuntary petition in bankruptcy, provide it is not vacated within 30 days from date of filing, appointment of a receiver or trustee for Seller's business, provided such appointment is not vacated within 30 days from date of such appointment, execution by the Seller of an assignment for the benefit of creditors; and

(g)    If any Federal, State or Local authorities having jurisdiction shall direct BUYER to undertake or refrain from undertaking work, or certain types of work, and as a result thereof the merchandise or services ordered herewith shall become unnecessary.

For ship availabilities with durations of greater than 60 days, Buyer's right to terminate the Order under Subparagraphs (a) through (g) above may be exercised if the Seller does not cure such failure within seven (7) calendar days after receipt of "Cure Notice" from Buyer specifying the failure.  For ship availabilities with durations of less than 61 days, Buyer's right to terminate the Order may be exercised if the Seller does not cure such failure within three (3) days after receipt of "Cure Notice" from Buyer specifying the failure.

If Buyer terminates the Order in whole or in part by reason of Seller's default, Buyer may acquire (re-procure) under the terms and conditions and in the manner Buyer considers reasonable and appropriate such similar Supplies or Services as those terminated. The Seller

shall be liable to Buyer for any excess costs for Supplies or Services so acquired, it being understood that the Seller shall continue to work on that portion of the work not terminated. With regard to the Seller's liability for excess costs:

(A)     Except for defaults by Seller's subcontractors at any tier, the Seller shall not be liable for any excess costs if the failure to perform under the Order arises from causes beyond the control and without the fault or negligence of the Seller. Examples of such causes include acts or omissions on the part of Buyer; acts of God; civil strife; labor strikes; actions of the Government or any sovereign government in its sovereign or contractual capacity; fires; floods; epidemics; quarantine restrictions; freight embargoes.

(B)     If the delay or failure is caused by the delay or failure of a subcontractor of the Seller, and if such delay or failure arises out of causes beyond the reasonable control of both the Seller and the subcontractor, and without the fault or negligence of either of them, the Seller shall not be liable to Buyer for excess costs, unless the subcontracted Supplies or Services to be furnished by the subcontractor were reasonably obtainable from other sources in sufficient time to permit the Seller to meet the required Delivery schedule.

If the Order is terminated for default, Buyer may require the Seller to transfer title and deliver to Buyer or to the Government, any (i) completed Supplies and (ii) partially completed Supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information and contract rights (collectively referred to as "manufacturing materials" in this Clause), that the Seller has specifically produced or acquired for the terminated portion of the Order Seller shall also protect  and preserve property in its possession in which Buyer has an interest.

The parties shall agree on the amount of payment for manufacturing material and services delivered and accepted, and for the production and preservation of the property. Failure to agree shall be deemed a dispute under the "Disputes" Clause of the Order.  The Seller may not withhold Supplies, or partially completed Supplies, materials, parts, tools, dies, jigs, fixtures, etc. pending a resolution of any such dispute.

If, after termination for a Seller's default, it is determined that the Seller was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been for the convenience of Buyer under the Clause of the Order entitled "Termination for Convenience."

It is expressly understood these remedies available to Buyer may be cumulative and additional to any others provided by this agreement, the purchase order, or further remedies provided in law or equity.  At the time of any such termination, as provided for above, the Seller shall discontinue all work, place no additional orders, and cancel existing orders, on the best possible terms.  Pending instructions, the Seller shall preserve and protect existing material, work in process, and completed work.  The Seller's termination payment, if any, shall be based on that proportion of work satisfactorily completed at the time of termination.  Buyer may offset against any sums due or to become due the Seller all costs incurred pursing any of the remedies provided herein, including but not limited to, reasonable overhead, profit, and attorney's fees. The seller hereby agrees to indemnify Buyer for all damages and costs incurred by Buyer related to the subcontractor's failure to make adequate progress to meet the scheduled completion

date, including but not limited to liquidated damages assessed to Buyer by Buyers customer, and cost of completing the work thereof.

**46.** **Disputes**

(a)     This Order and the performance of the parties hereunder shall be controlled and governed by the Law of Federal Government contracts and, where the Federal Government contracts law is not applicable, the law of the State of California. The parties shall attempt, in good faith, to settle all disputes arising under this Order. Any dispute which the parties cannot reach an amicable settlement will be resolved as described in paragraphs (b), (c) and (d) below. Pending final resolution of any dispute under this Order, Seller shall proceed diligently with the performance of this Order.

(b)     In the event (1) Seller's claim, or any portion thereof, against Buyer is the proper subject for a claim by Buyer against a higher-tiered contract contractor, including the Government, under the terms of the Buyer's Contract with a higher-tiered contractor ("Buyer's Contract"), or (2) Buyer's claim against Seller, or any portion thereof, is based upon a corresponding claim against Buyer by a higher-tiered contractor, including the Government under Buyer's contract, then the dispute shall be litigated only pursuant to the Disputes clause of Buyer's Contract. Seller will cooperate fully with Buyer in drafting and documenting any claims to be presented to the higher-tiered contractor or in responding to any claim by a higher-tiered contractor. Seller agrees to certify that its claim or defense is made in good faith, all supporting data for its claim or defense are accurate, current, and complete, and the amount of the claim accurately reflects the amount for which the Seller believes it is entitled.

Seller and Buyer agree that the claim of a higher-tiered contractor or the decision of the higher-tiered contractor on a claim presented by Buyer is final and binding on the parties unless the higher-tiered contractor's action is appealed pursuant to Buyer's Contract. Buyer shall notify Seller of the higher-tiered contractor's action within 10 days after Buyer's receipt thereof. Within 10 days of such notice, Seller shall advise Buyer in writing whether Seller desires to appeal the action. If Seller desires the action appealed, Seller's notice to Buyer shall set forth in detail its reasons and shall specifically request Buyer to appeal such decision. Buyer shall have absolute discretion whether to appeal such decision.

If Buyer agrees to appeal a decision, Seller agrees to indemnify and hold harmless Buyer for the cost of said appeal and applicable attorney's fees incurred in prosecuting any such appeal initiated by Buyer at Seller's request. Seller may participate in any such appeal at its own expense. Buyer may require the Seller to prosecute the appeal in Buyer's name and at the prosecution of appeals, (if such authorization is provided, Seller shall have full responsibility for such proceedings and shall bear all expenses, including attorney's fees in connection therewith, underline provided however, underline that such authorization shall not constitute Seller the agent or attorney for Buyer.) The outcome of the appeal shall be final and binding on the parties. Buyer agrees that it will take no action to settle or prejudice Seller's claim without Seller's consent. Seller's right to interest is limited to its apportioned share of interest recovered pursuant to the appeal.

Ex B 022

(c)     For all other disputes, the parties agree to enter into binding Arbitration. The American Arbitration Association Commercial Arbitration Rules (most current) are to govern the Arbitration. The Arbitration shall take place in the City of San Diego, State of California. The Arbitrator shall be bound by the applicable Subcontract provisions and California law in adjudicating the dispute. It is agreed by both parties that the Arbitrator' decision is final, and that no party may take any action, judicial or administrative, to overturn this decision. The judgment rendered by the Arbitrator may be entered in any court having jurisdiction thereof.

## 47.    Certification of Claims and Demands

In the case of any Order entered into under a prime contract with the United States, the following will further apply to any claim, demand or request for equitable adjustment asserted by Seller in addition to any other requirements set forth herein:

Seller shall certify any such claim, demand or request in accordance with the provisions of the Contract Disputes Act of 1978, 41 U.S.C. з601, et. seq.;

Seller shall indemnify and hold Buyer harmless against any claim, demand, or legal action against Buyer under the provisions of 41 U.S.C. з604 asserted in connection with or as a result of Buyer's submittal to the United States of any such claim, demand, or request of Seller.

## 48.    Cost or Pricing Data Indemnity

If Seller submitted cost or pricing data (as defined in FAR subpart 15.4 Contract Pricing) as part of the process leading up to the award of this Order or if Seller submits such data in connection with the pricing of any change order or other modification of this Order, Seller acknowledges that it is aware of Buyer's potential liability to the Government in the event that any of Seller's data were not current, complete, or accurate. Seller warrants that all cost or pricing data submitted by it (including data obtained from Seller's subcontractors, if any) in connection with Order shall be complete, accurate, and current as of the time of agreement between Buyer and Seller to the price of this Order. Seller shall indemnify and save harmless Buyer from any and all loss or expenses caused by any breach of the foregoing warranty, including but not limited to any and all costs and fees incurred by Buyer in defending against claims alleging deficiencies in Seller's cost or pricing data, regardless whether such claims may ultimately be held lacking in merit.

## 49.    Release of Information

Seller shall not advertise, publish, or otherwise release any information relating to the    Order, including the fact that Buyer has issued the Order, without Buyer's prior written   permission.

## 50.    Anti-Kickback Act, Business Conduct and Ethics, Debarment and Suspension

(a)    Anti-Kickback Covenant. Seller is hereby on notice that this Order is subject to the terms of the Anti-Kickback Act of 1986 (41 U.S.C. з51-58) and implementing regulations and prime contract clauses. Seller agrees that Seller shall be strictly prohibited from providing or attempting to provide or offering to provide any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind directly or indirectly to Buyer, to any Buyer employee, or to any other subcontractor of Buyer or any employee of any such subcontractor for the

purpose of improperly obtaining this or any other contract or Order from Buyer or for rewarding favorable treatment in connection with this or any other contract or Order between Buyer and Seller. Seller also agrees that it shall promptly report to Buyer's Ethics Hotline (619) 232-3200 Ext.119 any solicitation or request for a kickback as defined in the previous sentence. Seller's breach of the forgoing prohibition or of the foregoing obligation to report shall be considered a material breach of this contract and of any and all contracts between Buyer and Seller.

(b) <u>Gifts and Gratuities to Buyer's Personnel.</u> The Seller is hereby on notice that it is Buyer's policy that Buyer's personnel owe complete loyalty to Buyer and are forbidden to accept money or things of value from any supplier of goods or service to Buyer, regardless whether such acceptance would constitute an act prohibited by the Anti-Kickback Covenant of this Order. Seller for itself and its principal owners, stockholders, and officers, warrants and covenants that no employee of Buyer has any financial interest in Seller (except such as has been disclosed in writing to Buyer's Director of Contracts), and that Seller has not and will not directly or indirectly give anything of value to any employee of Buyer. The only exception to the foregoing prohibition against gifts or gratuities to Buyer's personnel shall be promotional or commemorative items having a value of less than $25.00, and food and refreshments during business meetings. Breach of the foregoing warranty and covenant shall entitle Buyer, in addition to any other rights and remedies, immediately to terminate for default any and all Orders to Seller outstanding at the time that Buyer learns of any such breach, regardless of when such breach may have occurred.

(c) <u>Procurement Integrity Covenant.</u> Seller is hereby on notice that this Order is subject to the terms of the Office of Federal Procurement Policy Act (41 U.S.C. ∋423) and implementing regulations. Seller agrees that Seller shall, during the conduct of any federal agency procurement, be strictly prohibited from engaging in any of the following activities: (i) making, directly or indirectly, any offer or promise of future employment or business opportunity to, or engaging, directly or indirectly, in any discussion of future employment or business opportunity with, any procurement official of such agency; (ii) offering, giving, or promising to offer or give, directly or indirectly, any money, gratuity, or other things of value to any procurement official of such agency; (iii) soliciting or obtaining, directly or indirectly, from any officer or employee of such agency, any proprietary or source-selection information regarding such procurement; (iv) knowingly disclosing any proprietary or source-selection information regarding such procurement, directly or indirectly, to any person other than a person authorized by the head of such agency or the contracting officer to receive such information; or (v) permitting any individual who was formerly a Government procurement official with respect to the Government contract appearing on the face of this Order to Knowingly participate in any manner in any negotiations leading to the award, modification, or extension of a contract for such procurement, or to knowingly participate personally and substantially on behalf of the Seller in performance of such contract [this last restriction, number (v), only applies if this Order qualifies under 41 U.S.C. ∋423(d)]. Seller also agrees

that it shall promptly report to Buyer's Ethics Hotline (619) 232-3200 Ext.119 any violations or possible violations of the above provisions.

Seller's violation of any of the prohibitions set forth in 41 U.S.C. ɔ423 or failure to comply with the reporting requirements shall be considered a material breach of this contract and of any and all contracts between Buyer and Seller. Seller agrees to indemnify and save harmless Buyer and its successors, assigns, or customers from any expense, loss, damage, or liability on account of any violations of the foregoing prohibitions. Seller agrees at its own expense to defend any actions, suits, or claims in which such violations are alleged, provided that Seller is notified as to such actions, suits, or claims.

(d)     Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions. Seller is hereby on notice that if a Government contract number appears on the face of this Order and if this Order exceeds $150,000 this Order is subject to the terms of 31 U.S.C. ɔ1352 and implementing regulations and prime contract clauses. Seller agrees that Seller shall be strictly prohibited from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee or any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the award of, or the modification of, any federal contract. Seller also agrees that it will furnish to Buyer's Director of Contract Management a disclosure form, OMB Standard Form LLL, Disclosure or Lobbying Activities, if any funds other than federal appropriated funds (including profit or fee received under a federal transaction) have been paid, or will be paid, to any person as defined in the previous sentence to influence such person in connection with a federal contract. The Seller further agrees that it shall file a disclosure form with Buyer's Director of Contract Management at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any disclosure form previously filed by Seller under this clause. Seller's breach of the foregoing prohibition or of the foregoing obligation to file disclosure forms shall be considered a material breach of this contract and of any kind and all contracts between Buyer and Seller.

(e)     Debarment and Suspension Covenant. Seller is hereby on notice that if this Order exceeds $35,000, this Order is subject to the terms of FAR Subpart 9.4. Seller for itself and its principals warrants and covenants that neither Seller nor any of its principals as the time of entering into this Order is debarred, suspended, or proposed for debarment by the Federal Government (except such as has been disclosed in writing to Buyer's general Counsel). "Principals" as used in this clause means officers, directors, owners, partners, and persons having primary management or supervisory responsibilities. Breach of the foregoing warranty and covenant shall entitle buyer, in addition to any other rights and remedies, immediately to terminate for default any and all Orders to Seller outstanding at the time that Buyer learns of any such breach, regardless when such breach may have occurred.

## 51. Limitation on Liability

EXCEPT FOR THE RIGHTS AND OBLIGATIONS SET FORTH IN THE TERMINATON, INDEMNITY AND WARRANTY CLAUSES HEREIN, UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR: (i) PUNITIVE, EXEMPLARY OR OTHER SPECIAL DAMAGES ARISING UNDER, OR RELATING TO, THIS CONTRACT; OR (ii) INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, DELAY OR TIME RELATED DAMAGES, LOSS OF INCOME, LOST PROFITS OR LOSS OF ANTICIPATED PROFITS, LOST BUSINESS, LOSS OF BUSINESS REPUTATION, OR LOSS OF BUSINESS OPPORTUNITIES, UNREALIZED SAVINGS, ANY AND ALL ATTORNEYS' FEES AND COSTS) ARISING UNDER, OR RELATING TO THIS CONTRACT, REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED IN CONTRACT, TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY, AND REGARDLESS OF WHETHER BUYER WAS ADVISED OF, KNEW OF, OR SHOULD HAVE KNOWN OF, THE POSSIBILITY OF SUCH DAMAGES, TO BUYER'S BENEFIT, IF BUYER FURNISHES GOODS OR SERVICES TO THE SELLER, SELLER AGREES TO AND DOES WAIVE ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY FOR FITNESS OR FOR A PARTICULAR PURPOSE THAT MAY FLOW TO IT FROM BUYER.

## 52. NO DISCRIMINATION, EQUAL EMPLOYMENT OPPORTUNITIES FOR VETERANS AND PERSONS WITH DISABILITIES

Seller and Seller's subcontractors shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.

Seller must abide by the requirements of the below cited Federal Regulations and include this language in all subcontracts:

**Seller and Seller's subcontractors shall abide by the requirements of 41 CFR 60–300.5(a). This regulation prohibits discrimination against qualified protected veterans, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans as applicable.**

**Buyer and Seller shall abide by the requirements of 41 CFR 60-741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities as applicable.**

**Buyer and Seller**, when including this language in all subcontracts, shall ensure the two paragraphs in the section above **are included in bold font** as required by the Federal Regulations.

Seller covenants to hold Buyer and its assignees harmless from any and all costs, damages and expenses (including reasonable attorney's fees) incurred by Buyer and its assignees arising out of or as a result of any failure of Seller to comply with any such laws and regulations.

## 53. Severability

If any provision of the Purchase Order, or part thereof, shall be invalid or unenforceable, such provision or part shall be deemed severed, and the remainder hereof shall be given full force and effect.

## 54. Authority

Each party covenants to the other party that it is authorized to enter into the Order.

Ex B 026

**55.    Electronic Signatures**

Delivery of an executed counterpart of a signature page to the Order by email shall be effective as delivery of a manually executed counterpart of the Order.

**56.    Examination of Records**

Seller agrees that the Buyer, Buyers Customer, the Contracting Officer, or other duly authorized Government Employee shall, until the expiration of three (3) years after final payment under the Order, have access to and the right to examine any directly pertinent books, documents, papers, and records involving transactions pertaining to the Order.

The period of access to and right of examination of records which relate to (i) Buyer's appeals under the "Disputes" Clause of the Prime Contract, (ii) litigation or settlement of claims arising out of the Prime Contract or (iii) cost and expenses of the Prime Contract or the Order shall continue until such appeals, litigation, or claims have been disposed of.

**57.    Waiver**

No waiver by either Buyer or the Seller, whether written or oral, expressed or implied, of any rights under or arising from the Order shall be binding on any subsequent occasion and no concession by either Buyer or the Seller shall be treated as a variation of the Order unless specifically agreed in writing.

**58.    Buyer Authorization**

(a)    Buyer's Procurement and Contract/Subcontract representatives have sole authority to  make contractual commitments on behalf of Buyer, to provide contractual direction, and to  change contractual requirements defined in this Order.

(b)    Buyer's program management, operations, engineering, technical, safety, quality or other personnel  may from time to time render assistance, give technical advice, discuss, or exchange information with Seller's personnel concerning the Work hereunder. Such actions shall not be  deemed to be a change under the "Changes" clause above, and shall not be the basis for  equitable adjustment. If Seller believes the foregoing creates an actual or constructive change,  Seller shall notify the Buyer Procurement or Contract/Subcontract representatives and shall not  accept such direction or perform said action unless authorized under subparagraph (a) above.

**59.    Customer Communications**

Buyer shall be solely responsible for all liaison and coordination with the Customer or any higher tier contractor(s) as it affects this Order or any Work thereunder or related thereto. Except as required by law, Seller shall not communicate with the Customer, and any higher tier contractor(s), with respect to this Order or any Work thereunder or related thereto, without prior approval of the Buyer's Procurement or Contract/Subcontract Representative. Seller shall promptly notify Buyer of any communications, initiated by the Customer or any higher tier contractor(s) that affects this Order or any Work thereunder or related thereto.

**EXHIBIT C**

**AMP United**
**50 Sheffield Drive**
**Suite 104**
**Dover NH 03820**

08/05/2022

Pacific Ship Repair & Fabrication, Inc.
1625 Rigel St
San Diego CA 92113

Dear

Enclosed please find a statement of your account as of  08/05/2022

We consider current and accurate information on your account part of the service we provide. Please call if you have any questions regarding this statement or any of the listed invoices. We appreciate your prompt payment. It allows us to provide better service, and obtain the highest quality materials and subcontract services for your project.

Statements are normally printed once a month and will reflect all invoices and payments received to date. If you have already sent payment on any of the listed invoices, please feel free to contact our office to verify that we have received your payment.

Please let us know how we can serve you better!

Sincerely,

AMPU\KWaclawski



**AMP United**
50 Sheffield Drive
Suite 104
Dover NH 03820
603-318-0022

License:

# STATEMENT

Statement Date: 08/05/2022

**Billed To:** Pacific Ship Repair & Fabrication, Inc.
1625 Rigel St
San Diego CA 92113

**Project:** USS Rushmore(LSD-47)(PacShip)
S 32nd St
San Diego CA 92113

| Invoice# | Due Date | Descript | | Amount | Paid/Credit | Now Due |
|----------|----------|----------|---|--------|-------------|---------|
| 1111-1 | 09/02/2021 | Progress Billing# 1 | | 17,058.50 | | 17,058.50 |
| 1111-2 | 09/15/2021 | Progress Billing# 2 | | 22,601.00 | | 22,601.00 |
| 1111-3 | 10/07/2021 | Progress Billing# 3 | | 26,271.30 | | 26,271.30 |
| 1111-4 | 10/27/2021 | Progress Billing# 4 | | 2,303.20 | | 2,303.20 |
| | | | **Totals:** | **68,234.00** | | **68,234.00** |

| Current | 1-30 Days | 31-60 Days | 61-90 Days | 91+ Days | Retention |
|---------|-----------|------------|------------|----------|-----------|
| 0.00 | 0.00 | 0.00 | 0.00 | 68,234.00 | 0.00 |

***Please Pay This Amount*** **68,234.00**

| **Contract Summary** | Original Contract Amount | 68,234.00 |
|---|---|---|
| | Net Changes to Date | 0.00 |
| | New Contract Amount | 68,234.00 |
| | Total Invoiced to Date | 68,234.00 |
| | Remaining Balance on Contract | 0.00 |

*Terms: All invoices are due and payable within 30DY of receipt. A service charge of 0.00 % per annum will be computed on all amounts overdue on regular statement dates.*

*Thank you for your prompt payment.*